**Maria GONZALEZ and Daniel Sirotsky, Plaintiffs–Appellants,**

v.

**Gene McNARY and Richard Smith, Defendants–Appellees.**

**No. 91–5656.**

United States Court of Appeals, Eleventh Circuit.

Jan. 13, 1993.

Edgardo V. Caturla, Miami, Fla., for plaintiffs-appellants.

Dexter W. Lehtinen, U.S. Atty., Dexter A. Lee, Asst. U.S. Atty., Lisa T. Rubio, Miami, Fla., for defendants-appellees.

Before TJOFLAT, Chief Circuit Judge; EDMONDSON, Circuit Judge; and MORGAN, Senior Circuit Judge.

MORGAN, Senior Circuit Judge:

Appellants Maria Gonzalez and Daniel Sirotsky filed applications for permanent residence in the United States pursuant to section 1 of the Cuban Refugee Adjustment Act of 1966 (hereinafter the Act). The district court upheld the denial of the applications on the ground that Appellants were statutorily ineligible for adjustment of status since they were no longer residing with Marino Gonzalez, the qualifying Cuban. We AFFIRM.

## STATEMENT OF FACTS

Maria Gonzalez is a native and citizen of Peru. She entered the United States as a tourist in October of 1983 and has resided in the United States since that date. On December 12, 1983, Maria Gonzalez married the late Marino Gonzalez, a Cuban refugee. Daniel Sirotsky is the natural minor child of Maria Gonzalez and the stepchild of her late husband, Marino Gonzalez.

On April 29, 1985, Marino Gonzalez applied for lawful permanent residence pursuant to the Act. Shortly thereafter, Maria Gonzalez and Sirotsky filed their applications for permanent residence under the Act, based on their status as the spouse and stepchild of Marino Gonzalez. On June 9, 1986, Marino Gonzalez' application was approved, but Appellants' applications were not acted upon.

Marino Gonzalez passed away on May 14, 1988. On September 30, 1988, Richard Smith, District Director of the Florida District of the Immigration and Naturalization Services (INS), denied Appellants' applications. The sole basis for denial was that Appellants were no longer "residing with" Marino Gonzalez after his death. This denial was affirmed by Robert McNary as Commissioner of the INS.

On July 11, 1990, Maria Gonzalez and Sirotsky filed a complaint in the District Court of the Southern District of Florida seeking declaratory and injunctive relief against Smith and McNary. The complaint alleged that, as the wife and stepchild of a Cuban citizen who had been admitted for permanent residence under the Act, they were entitled to be admitted as permanent residents and that Appellees' denial of their applications was arbitrary and capricious and contrary to the specific language and purpose of the Act.

Appellees filed a motion to dismiss the complaint on the ground that Appellants were statutorily ineligible to adjust their status under the Act since they no longer resided with Marino Gonzalez. The district court dismissed Appellants' complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted. 765 F.Supp. 721.

## STANDARD OF REVIEW

When reviewing the dismissal of a complaint under Fed.R.Civ.P. 12(b)(6), this Court must accept the allegations set forth in the complaint as true. The district court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *see also, Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir.1986) ("[W]e may not affirm unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief."). However, the district court's disposition of Appellees' motion to dismiss involved its interpretation of section 1 of the Act. We review *de novo* questions of statutory interpretation. *United States v. Fleet Factors Corp.*, 901 F.2d 1550, 1553 (11th Cir.1990).

## DISCUSSION

Appellants characterize the denial of their applications as arbitrary and capricious and an abuse of discretion. The INS, under authority delegated by the Attorney General, clearly has discretion under the

Act[1] to adjust the status of the spouse and child of a Cuban alien who has been admitted for permanent residence. However, this discretion only extends to the spouse and child if they are statutorily eligible. The discretion of the INS does not vest until they become statutorily eligible.

■ Appellants challenge the district court's conclusion that they were statutorily ineligible for adjustment under the Act. The starting point in statutory construction must be the language of the statute itself. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). "[T]he meaning of the statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain ... the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). Courts must assume that Congress intended the *ordinary meaning of the words* it used, and absent a clearly expressed legislative intent to the contrary, that language is generally dispositive. 447 U.S. at 108, 100 S.Ct. at 2056.

■ Appellants contend that the term "residing with such alien in the United States" is ambiguous. Appellants' applications for adjustment of status were based on Marino Gonzalez' status as a Cuban alien who had obtained permanent residence under the Act. The language of the Act declares that its provisions shall be applicable to the spouse and child who are *"residing with"* an alien who has been lawfully admitted for permanent residence. Appellants argue that the Act does not require actual physical residence with the qualifying Cuban resident. Instead, it only requires the spouse and child to reside within the United States, regardless of whether they are residing with the Cuban alien. This argument is rebutted by the plain language of the statute which clearly requires that the spouse and child reside *with* the Cuban alien and reside in the United States. We need not decide the exact meaning of the term "residing with" since Appellants clearly were not residing with Marino Gonzalez four months after his death, when their applications were denied.

■ Because the Act represents refugee legislation of a humanitarian nature, Appellants argue that it should be construed similarly with other, more general sections of the Immigration and Nationality Act (INA). *see generally* INA § 203, 8 U.S.C. 1153 (Supp.1992). A statute should be construed so that effect is given to all its provisions, so that no part of it will be inoperative or superfluous, void or insignificant. *Sutherland Stat. Const.* § 46.06 (5th Ed.). It is a court's duty "to give effect, if possible, to every clause and word of a statute." *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955). It is true that section 1 of the Act imposes an additional requirement of residence not mandated in other sections of the INA. However, this distinction shows that Congress intended the residence requirement to be an additional prerequisite to statutory eligibility. While eligibility under other sections is determined by whether a bona fide marriage exists, the clear, plain and unambiguous language of section 1 of the Act requires that the spouse also reside with the qualifying Cuban alien. A contrary interpretation would

---

**1.** Section 1 of the Cuban Refugee Adjustment Act of 1966, Pub.L. No. 89–732, 80 Stat. 1161, *as amended* 8 U.S.C. § 1255 note (Supp.1992) provides:

That, notwithstanding the provisions of Section 245(c) of the Immigration and Nationality Act, the status of any alien who is a native or citizen of Cuba and who has been inspected and admitted or paroled into the United States subsequent to January 1, 1959, and has been physically present in the United States for at least one year, may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if the alien makes an application for such adjustment, and the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence. ... the *provisions of this act shall be applicable to the spouse and child of any alien described in this subsection, regardless of the citizenship and place of birth, who are residing with such alien in the United States.*

render the term "residing with" superfluous.

■ Appellants also argue that the district court's conclusion does not comport with the purpose or legislative history of the Act. Absent a clearly expressed legislative intent to the contrary, the plain and unambiguous language of the statute must prevail. *Consumer Product Safety Comm'n*, 447 U.S. at 108, 100 S.Ct. at 2056. The purpose of the Act's provision permitting a spouse and child of a Cuban alien to obtain permanent residence is to promote family unity. *See* H.R.Rep. No. 1978, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.C.C.A.N. 3792, 3799 (letter of Deputy Attorney General Ramsey Clark). Congress intended to permit the spouse and children of a Cuban who had become a lawful permanent resident to also become residents and remain in the United States. The condition for obtaining such a benefit was that the spouse and child must reside with the Cuban alien in the United States. Once the qualifying Cuban alien dies, there is no family unity purpose to be served. The wife and child can be unified in their home country of Peru as well as in the United States. Appellants argue that this interpretation runs contrary to the legislative intent. However, there is no evidence indicating that Congress intended a contrary result and in fact, the legislative history supports our decision.

## CONCLUSION

According to the express language of section 1 of the Act, residence with the Cuban alien spouse is required in order to be eligible for adjustment of status. The facts set forth in Maria Gonzalez' and Sirotsky's complaint clearly show that they were not residing with Marino Gonzalez, the qualifying Cuban alien, at the time their applications were denied. Since Appellants were statutorily ineligible for adjustment, their complaint failed to state a claim upon which relief could be granted. Therefore, the decision of the district court is AFFIRMED.