[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 21, 2005
THOMAS K. KAHN
CLERK

No. 04-10730

D. C. Docket No. 03-21491-CV-PCH

PEDRO GILLY CALZADILLA,

Plaintiff-Appellant,

versus

BANCO LATINO INTERNACIONAL,
FONDO DE GUARANTIA, Fondo de Guarantia
de Depositos Proteccion Bancaria,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Florida

(June 21, 2005)

Before DUBINA, PRYOR and KRAVITCH, Circuit Judges.

DUBINA, Circuit Judge:

The plaintiff/appellant Pedro Gilly Calzadilla appeals the district court's dismissal of his claims against the defendant/appellee Fondo de Guarantia de Depositos Proteccion Bancaria ("FOGADE") for malicious prosecution and conspiracy to maliciously prosecute.[1] The district court concluded that it lacked subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*, because FOGADE, an arm of the Venezuelan government, had not waived its sovereign immunity. For the reasons that follow, we affirm.

## I. BACKGROUND

This litigation arises, at least indirectly, from the collapse of the Venezuelan banking industry and the government's handling of Banco Latino, S.A.C.A. ("BLCA"), the country's second largest bank. In 1994, the Venezuelan government intervened in the collapse of BLCA and placed it in receivership. Through FOGADE, which is the American equivalent of the Federal Deposit Insurance Corporation, the government provided public funds to satisfy BLCA's obligations. At that time, BLI, a financial institution located in Miami, Florida, and established under the Edge Act, 12 U.S.C. § 611 *et seq.*, was a subsidiary of

---

[1] Pursuant to an agreement reached between the parties in the district court, the district court dismissed the claims against Banco Latino International ("BLI").

2

BLCA.  Although it was organized under the laws of the United States, BLI's business was conducted primarily beyond the borders of this country.  Following the collapse of its parent, BLI filed for Chapter 11 bankruptcy protection in the Southern District of Florida.  Between 1988 and 1994 Calzadilla, a substantial shareholder of BLCA, served on the board of directors of BLCA, and between 1991 and 1992, he served on the board of directors of BLI.

As a result of the banking collapse, FOGADE was vested with substantial responsibility for managing its country's financial crisis.  Pursuant to emergency laws enacted by the Venezuelan congress FOGADE filed criminal and civil actions against the insiders of BLCA and other failed banks.  Specifically, FOGADE, along with BLCA and BLI, filed a civil action in the Southern District of Florida against Calzadilla for, among other things, Racketeer Influenced and Corrupt Organizations Act ("RICO") claims.  In 1998, the district court dismissed BLCA and FOGADE under the doctrine of *forum non conveniens*, but allowed BLI to file an amended complaint and continue the litigation.  *Banco Latino v. Gomez Lopez*, 17 F. Supp. 2d 1327 (S.D. Fla. 1998).  According to Calzadilla, FOGADE financed and administered BLI's lawsuit.  Calzadilla ultimately prevailed on summary judgment, *see Banco Latino Int'l v. Gomez Lopez*, 95 F. Supp. 2d 1327 (S.D. Fla. 2000), and subsequently filed this action for malicious

3

prosecution.  The district court dismissed FOGADE under the FSIA, and Calzadilla perfected this appeal.

## II. DISCUSSION

"The FSIA regulates subject matter jurisdiction and provides the only basis for courts in this country to acquire jurisdiction over a foreign state.  It provides that a foreign state is immune from the jurisdiction of the United States unless an FSIA statutory exemption is applicable."  *Aquamar, S.A. v. Del Monte Fresh Produce*, 179 F.3d 1279, 1290 (11th Cir. 1999) (citation and quotation omitted); *accord* 28 U.S.C. § 1604.  The FSIA exemption provision, 28 U.S.C. § 1605, provides, in relevant part, that:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case--
> (1) in which the foreign state has waived its immunity either explicitly or *by implication*, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;
> (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;
>
> * * *
>
> (5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or

4

damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; *except* this paragraph *shall not apply to*--
(A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or
(B) *any claim arising out of malicious prosecution*, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

28 U.S.C. § 1605(a) (emphasis added).

Calzadilla argued exclusively to the district court that FOGADE implicitly waived its sovereign immunity under 28 U.S.C. § 1605(a)(1) by filing the underlying action against him. The district court disagreed and dismissed FOGADE. On appeal, Calzadilla, for the first time, argues in the alternative that FOGADE waived its immunity under 28 U.S.C. § 1605(a)(2) because the underlying litigation constitutes commercial activity. Calzadilla concedes, and the record clearly reflects, that his claim was not premised on the commercial activity exception. Generally, this court does not consider an issue or theory on appeal that was not raised in the district court. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). This case is no exception to that practice. Thus, we only address the issue raised under 28 U.S.C. § 1605(a)(1).

We review the district court's determination that it lacks subject matter jurisdiction under the FSIA de novo, but review the district court's factual

5

determinations for clear error. *Aquamar*, 179 F.3d at 1289-90. The starting point in statutory construction is the language of the statute, and if that is plain, then the sole function of the court is to enforce the statute according to its terms. *Gonzalez v. McNary*, 980 F.2d 1418, 1420 (11th Cir. 1993). "A statute should be construed so that effect is given to all its provisions, so that no part of it will be inoperative or superfluous, void or insignificant." *Id.*

Although this circuit has not considered a factually similar case, we have recognized that the implied waiver provision under 28 U.S.C. § 1605(a)(1) is narrow and that it generally does not apply unless the foreign state reveals its intent to waive its immunity by: (1) agreeing to arbitration in another country, (2) agreeing that the law of a particular country should govern a contract, or (3) filing a responsive pleading in an action without raising the defense of sovereign immunity. *Aquamar*, 179 F.3d at 1291 n.24 (citing H.R. Rep. No. 94-1487, at 18 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6617). The district court correctly concluded that the filing of the underlying action does not fall within any of these three examples and, therefore, does not constitute an implied waiver. *See Aquamar*, 179 F.3d at 1291 n.24 ("The courts, loath to broaden the scope of the implied waiver provision, rarely have found that an action that does not fit one of the above three examples constitutes an implicit waiver."); *accord Shapiro v.*

6

*Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir. 1991) ("These examples involve circumstances in which the waiver was unmistakable, and courts have been reluctant to find an implied waiver where the circumstances were not similarly unambiguous.").

Furthermore, Calzadilla's contention that FOGADE implicitly waived its sovereign immunity by filing the underlying civil action is untenable. The FSIA, 28 U.S.C. § 1605(a)(5), provides an exemption for noncommercial torts committed by a foreign state in the United States; but, 28 U.S.C. § 1605(a)(5)(B) expressly excludes "any claim arising out of malicious prosecution" from the statutory exemption for noncommercial torts. Thus, under Calzadilla's interpretation of the FSIA (that FOGADE's underlying action against him gives rise to implicit waiver under 28 U.S.C. § 1605(a)(1)), 28 U.S.C. § 1605(a)(5)(B) is superfluous: if a foreign state could implicitly waive its foreign sovereign immunity under the FSIA by maliciously prosecuting a claim in a United States court against an individual, then there would be no need for the malicious prosecution exception to the noncommercial tort exemption, which expressly provides that a foreign state retains its immunity under such a circumstance. *See Blaxland v. Com. Dir. of Public Prosecutions*, 323 F.3d 1198, 1209 (9th Cir. 2003) ("There cannot be *implied* waiver of sovereign immunity, for purposes of claims that malicious

7

prosecution and abuse of process occurred in this country, solely through tortious conduct limited to the very activities that constitute those torts, as any other conclusion would void the operation of [28 U.S.C.] § 1605(a)(5)(B).").[2]

For the foregoing reasons, we affirm the district court's judgment of dismissal for lack of subject matter jurisdiction under the FSIA.

**AFFIRMED.**

---

[2] Calzadilla's reliance on *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699 (9th Cir. 1992), is misplaced. In *Siderman*, the plaintiffs filed a civil action against Argentina for, *inter alia*, torture, and argued that the government implicitly waived its immunity because it presented letters rogatory for Siderman in a California court. *Id.* at 720-23. The district court dismissed the government under the FSIA, but the Ninth Circuit reversed and remanded because it could not say that the arguments as to implied waiver were devoid of merit: "Only because the Sidermans have presented evidence indicating that Argentina's invocation of United States judicial authority was part and parcel of its efforts to torture and persecute Jose Siderman have they advanced a sufficient basis for invoking that same authority with respect to their causes of action for torture." *Id.* at 722. The *Siderman* case is clearly distinguishable from this action.